**UNITED STATES of America,**

v.

**Ahmed Muse SALAD, Abukar Osman Beyle, and Shani Nurani Sheikh Abrar, Defendants.**

**Criminal No. 2:11cr34.**

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 21, 2012.

**756**

Benjamin L. Hatch, Brian J. Samuels, Joseph E. DePadilla, Assistant United States Attorneys, Norfolk, VA, for Plaintiff.

Larry M. Dash, Office of the Federal Public Defender, Norfolk, VA, Claire G. Cardwell, Esquire, Richmond, VA, for Defendant, Ahmed Muse Salad.

Lawrence H. Woodward, Jr., Esquire, Virginia Beach, VA, Jason A. Dunn, Esquire, Chesapeake, VA, for Defendant, Abukar Osman Beyle.

James S. Ellenson, Esquire, Newport News, VA, Fernando Groene, Esquire, Williamsburg, VA, for Defendant, Shani Nurani Sheikh Abrar.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, Chief Judge.

This matter comes before the court upon the Defendants Joint Motion to Transfer Venue ("Motion"), ECF No. 494, filed on September 17, 2012. The United States opposed the Motion in its Consolidated Response ("Response"), filed on October 17, 2012. The Defendants filed a Reply ("Reply"), ECF No. 528, on November 1, 2012, and the matter is now ripe for review. For the reasons stated herein, the Motion is **DENIED.**

### I. MOTION, RESPONSE, AND REPLY

The Defendants seek a transfer of venue, either to a different district or to another division within the Eastern District of Virginia. In support of their Motion, the Defendants advance two primary arguments. First, they contend that demographic characteristics of the Norfolk Division, particularly the large United States Navy presence, prevent the court from empaneling an unbiased jury. *See* Mot. at 10–12. The Defendants conducted independent polling, and they attached the re-

sulting data as an exhibit to the instant Motion. The Defendants submit that the polling reflects constitutionally intolerable levels of knowledge about piracy and bias toward the defendants within the Norfolk Division's jury pool.[1] Second, the Defendants argue that pretrial publicity has tainted the jury pool. To support this argument, the Defendants point to online discussion group postings (Mot. at 9; Reply at 8–9); comments of a Senior United States District Judge of this court (Mot. at 8–9; Reply at 4–7); previous piracy cases tried in this court (Mot. at 16); and, with perplexing frequency, a forthcoming motion picture starring Tom Hanks (Mot. at 2–3, 7, 15; Reply at 9). The United States opposes the Motion, asserting that the Defendants fail to demonstrate the necessity of a venue change, and that voir dire is the proper procedure to evaluate potential bias in the jury pool. Resp. at 13–16.

## II. LEGAL STANDARDS

■ In cases involving offenses "committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district," venue is laid in the district where the accused "is first brought." 18 U.S.C. § 3238. A defendant may move for an interdistrict transfer, but he is entitled to such a transfer only if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed.R.Crim.P. 21(a). The same framework for legal analysis governs intradistrict transfers under Rule 18 of the Federal Rules of Criminal Procedure. Fed.R.Crim.P. 18; *see United States v. Lentz*, 352 F.Supp.2d 718, 721 n. 5 (E.D.Va.2005).[2] The burden of demonstrating the requisite level of prejudice falls on the defendant. *Wansley v. Slayton*, 487 F.2d 90, 94 (4th Cir.1973).

■ When evaluating prejudice based on pretrial publicity, the court must take two steps. *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir.1991) (citing *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir.1987)). The court first evaluates "whether the publicity is so inherently prejudicial that pretrial proceedings must be presumed to be tainted." *Id.* If the defendant cannot make such a showing, the court proceeds to the second step: voir dire. *Id.*

1. The Defendants' Motion and polling focus on Norfolk. *See* Mot. at 17 n.18. They then assert that "Newport News was not examined, because, for these purposes, it is hardly distinguishable from Norfolk and shares the same media sources." *Id.* This assertion is unavailing. The Norfolk Division of this court includes the Cities of Cape Charles, Chesapeake, Franklin, Norfolk, Portsmouth, Suffolk, and Virginia Beach, and the Counties of Accomack, Isle of Wight, Northampton, and Southampton. *See* E.D. Va. Loc. Crim. R. 18. The Newport News Division of this court includes the Cities of Hampton, Newport News, and Williamsburg, and the Counties of Gloucester, James City, Mathews, and York. *Id.* In its Response, the United States refers to "Hampton Roads." *See* Resp. at 18. Hampton Roads encompasses the Cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Smithfield, Suffolk, Virginia Beach, Williamsburg, and Yorktown, and the Counties of Charles City, Isle of Wight, James City, New Kent, Surry, and York. *See Coastal Virginia—Hampton Roads*, Va. Tourism Corp., http://www.Virginia.org/regions/HamptonRoads (last visited Nov. 19, 2012). In any event, the focus of the court, at this juncture, is a transfer of venue from the Norfolk Division, where venue is laid. *See infra* text accompanying note 4; *see also infra* note 5.

2. All parties indicate their agreement with this principle. Mot. at 4; Resp. at 15. The court need not determine whether a lesser standard or quantum of proof applies to Rule 18. Even under the most forgiving standard of review, the Defendants have not demonstrated the need for a transfer at this juncture, as addressed herein.

■ Whether publicity has been "inherently prejudicial" necessarily depends on the circumstances of the case. Defendants are entitled to an impartial jury, not a pristine one. *Skilling v. United States,* — U.S. —, 130 S.Ct. 2896, 2914–15, 177 L.Ed.2d 619 (2010) ("Prominence does not necessarily produce prejudice, and juror *impartiality,* we have reiterated, does not require *ignorance.*" (citing *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961))). To infer inherent prejudice from the mere fact of pretrial publicity requires a showing of "extreme circumstances." *Wells,* 831 F.2d at 472.

Such circumstances were present in *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), a case upon which the Defendants rely heavily. Wilbert Rideau was convicted in a "kangaroo court" in Calcasieu Parish, Louisiana, after his lengthy confession was videotaped and broadcast repeatedly throughout the small town. *Rideau,* 373 U.S. at 724–26, 83 S.Ct. 1417. The Supreme Court reversed, holding that the inherent prejudice created by the broadcast compromised due process, and required a change in venue. The *Rideau* case was decided almost fifty (50) years ago. The Supreme Court has since refined the test for presumptive prejudice, articulating factors for courts to consider in less extreme cases. *Skilling,* 130 S.Ct. at 2915–16, These factors include the size and diversity of the jury pool; the style and tone of pretrial publicity; and the

length of time between the offense and the trial. *Id.*[3]

## III. ANALYSIS

With this legal framework in place, it is clear that the Defendants are not entitled to a change of venue at this juncture. Venue was properly laid in the Eastern District of Virginia, Norfolk Division, where the Defendants were first brought by United States Navy vessels and where the United States indicted them for prosecution in March, 2011.[4]

■ The Defendants have not carried their burden of demonstrating such presumptive prejudice that would require an immediate change of venue. The Defendants ask the court to find, in essence, that the jury pool has been *per se* prejudiced by media coverage and the community's general and collective involvement with the Navy. The court declines to do so. Contrary to the Defendants' repeated assertions, and despite their reliance on polling data, this case is not analogous to *Rideau.* The court cannot find, based on this evidence, the presumptive prejudice that infected Rideau's "kangaroo court" and deprived him of due process.

The Defendants fare no better under the multifactor *Skilling* analysis. The first factor examines the demographics of the local community. *Skilling,* 130 S.Ct. at 2915.[5] The Defendants rely on their polling data to argue, in effect, that the local

---

**3.** The fourth *Skilling* factor, acquittal by a jury, is inapposite to pretrial analysis.

**4.** While the Defendants argue that Norfolk was not the most convenient venue, because the offense "did not arise here," and that the statutory scheme vests the choice of venue with no "presumption in favor of this Division," Mot. at 16 (citing 18 U.S.C. § 3235), such arguments are irrelevant to the analysis of prejudice at this juncture. *See supra* note 2 and accompanying text.

**5.** The Court used the phrase: "size and characteristics of the community in which the crime occurred." *Skilling,* 130 S.Ct. at 2915. The Court's analysis focused on the community from which jurors were drawn and the effects of publicity on those jurors. While in the vast majority of cases, the location of the crime and the trial venue will be the same, *see* Fed.R.Crim.P. 18, the relevant community in this case, at the first instance, is located in the Norfolk Division, *see supra* note 1; text accompanying note 4, not the "high seas," where the crime was committed.

jury pool is predisposed to find the Defendants guilty. That conclusion is premature. The court declines to hold, at this early stage of the proceedings, that voir dire will be insufficient to test the impartiality of the jury pool.

The second *Skilling* factor, the nature and tone of pretrial publicity, also weighs against the Defendants. The Defendants identify no biased reporting, nor do they identify particular coverage of "evidence of the smoking-gun variety [that] invited prejudgment of . . . culpability." *Skilling*, 130 S.Ct. at 2916.

Instead, they identify four groups of unpersuasive, or irrelevant, commentary to support their claims of through-going prejudice. First, they quote, at great length, sensational excerpts from the more excitable, and anonymous, contributors to an online discussion forum hosted by the *Virginian–Pilot* in April, 2010. Mot. at 9; Reply at 8–9. Next, they suggest that local residents have been "subjected to the spectacle of eleven non-capital co-defendants being sentenced to life imprisonment, nine of them not once, but twice." Mot. at 16. Once again, the Defendants identify no instance of sensational or non-factual reporting on these proceedings, or

that any "spectacle" was involved.[6] The Defendants' argument that the sentencing jury will, therefore, conclude that it must now impose the death penalty is both speculative and premature.

In a similar manner, the Defendants repeatedly quote various remarks by a Senior United States District Judge of this court, which were made during jury selection in a totally unrelated case,[7] and insist that those statements "are the most important reason why venue must be transferred in this case." Reply at 6; *see also* Mot. at 8. This remark is hyperbole at its best, and the court completely disagrees with the suggestion, implicit or otherwise, that the comments of a fellow jurist to jurors in a totally unrelated case will impair the ability to conduct impartial and thorough voir dire in the case at bar. There is not one iota of evidence that anyone other than the parties and jurors in that case[8] are even aware of the referenced comments. Moreover, inquiry through voir dire can be made of the jurors in the case at bar as to whether they are aware of this other totally unrelated case, and any comments or proceedings therein. Accordingly, the court declines to grant a change of venue based on a chain of inferences and speculation.[9]

---

6. Such characterization is both inappropriate and out of context. On December 22, 2011, the original sentencing judge, United States District Judge Mark S. Davis, withdrew from the case after learning that restitution payments were being made to a marina in which his brother had a financial interest. Judge Davis disclosed the conflict on the record, and the case was randomly reassigned. The court resentenced two (2) defendants who had been sentenced on December 15, 2011, but whose judgments had not yet been entered, and resentenced seven (7) defendants as to restitution only, all with the same sentences and restitutions that Judge Davis had originally imposed. The court sentenced the remaining two (2) defendants anew. There was no "spectacle" or negative publicity in any regard related to Judge Davis's recusal

and the resulting resentencings. There have been no appeals or post-sentencing proceedings in these cases.

7. *United States v. Haskins*, No. 2:12cr81 (E.D.Va. filed May 25, 2012). The Indictment charged the defendant with making false statements during the purchase of a firearm, of which he was convicted by the jury.

8. *See supra* note 7.

9. A review of the docket in *Haskins*, No. 2:12cr81, reflects that defense counsel submitted a Motion for New Trial, in part, based on the judge's comments. *See* Def.'s Mot. for New Trial, Sept. 12, 2012, ECF No. 41. Counsel subsequently moved to withdraw that Motion. *See* Defense Mot. to Withdraw Previously Filed Mot. for New Trial, Oct. 30, 2012,

Finally, the Defendants argue that the upcoming release of a Tom Hanks film, about the Maersk *Alabama*, will bring additional media attention to the issue of piracy. According to the Motion and Reply, the movie is particularly relevant because it portrays Navy SEALs, some of whom are based in Virginia Beach, fighting pirates; the Maersk corporate offices are located in Norfolk; and Mr. Hanks filmed portions of the movie in the local area. The Defendants' arguments are unpersuasive. Even if the movie does have the potential to create prejudice, a point which the government does not concede, and the court does not assume to be true, it would presumably create prejudice in any market where it is released. Courts that have examined the effect of nationwide publicity have considered that factor to weigh *against* a transfer of venue. *See, e.g., United States v. Bakker,* 925 F.2d 728, 733 (4th Cir.1991) ("[I]tems of pre-trial publicity identified by Bakker as inflammatory received comparatively broader dissemination outside the court's district than within it. Such a finding weighs heavily against a change of venue....").

The third and final relevant *Skilling* factor, the time between the offense and the trial, likewise weighs against a venue transfer. The Defendants suggest that "ongoing coverage of piracy in the Norfolk area means that prejudice in this case will only continue to mount," and that this factor, therefore, supports the Motion. Mot. at 15. The Defendants misunderstand this factor. The analysis focuses not on publicity related to the trial, which naturally will increase as the trial date approaches, but rather on publicity related to the alleged offense. These offenses oc-

curred in February, 2011; the trial is scheduled for June, 2013. As the time between offense and trial increases, the effect of prejudicial publicity ("the decibel level of media attention") presumably decreases, thereby reducing the likelihood of prejudice and counseling against a transfer. *Skilling,* 130 S.Ct. at 2916; *see also* Resp. at 23.

## IV. CONCLUSION

Because the Defendants have failed to demonstrate presumptive prejudice based on *Rideau* and failed to demonstrate prejudice according to the *Skilling* framework, they have not justified an immediate transfer of venue. The court will, therefore, proceed to voir dire. In preparation for that process, counsel for both parties will have the opportunity to provide input to extensive written juror questionnaires to be submitted to a large number of prospective jurors in the Norfolk Division,[10] prior to any jury selection. The court will analyze the results of those questionnaires, together with counsel. If, based on the results of that analysis, the court finds it is unable to convene an impartial jury in this case in the Norfolk Division,[11] the court will reconsider a motion to transfer venue at that time. However, because it would be premature to make such a determination at this juncture, the Motion is **DENIED**. The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel for each Defendant, and to the United States Attorney at Norfolk.

**IT IS SO ORDERED.**

---

ECF No. 50. The court denied both Motions in a scathing Opinion and Order, criticizing the attorneys for making "such an irresponsible filing." *See* Op. & Order, Nov. 9, 2011, ECF No. 56.

**10.** *See supra* note 1.

**11.** *See supra* note 1.